Filed 11/23/22 Yahoo! V. Media Relevance CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| YAHOO!, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MEDIA RELEVANCE, INC. et al., <br><br> Defendants and Appellants. | H046485 <br> (Santa Clara County <br> Super. Ct. No. CV264874) |

Defendants Steven Clarke-Martin and the company he founded, Media Relevance, Inc., appeal from a judgment entered after the trial court granted summary adjudication on Yahoo! Inc.'s quiet title and declaratory relief claims.[1] Clarke-Martin asserts that Yahoo's complaint was "outside the statute of limitations for contract law," and therefore, "the judgment should be reversed." Finding no error, we affirm the judgment.

## I. Background

In October 2003, Clarke-Martin joined Yahoo as an employee. When he joined the company, he signed an "Employee Confidentiality and Assignment of Inventions Agreement" (employment agreement).

In paragraph 8 of the employment agreement, Clarke-Martin promised to "assign to Yahoo! or its designee, my entire right, title, and interest in and to . . . all Inventions

---

[1] The judgment also substituted Yahoo! Holdings, Inc., as the plaintiff and entered judgment in favor of Yahoo! Holdings, Inc., following Yahoo!'s representation that ownership interest in the subject patent family was transferred to Yahoo! Holdings, Inc., which was then sold to Verizon Communications, Inc. For the sake of clarity, unless it is within quoted material in the record, we will simply refer to plaintiff as Yahoo.

which I may solely or jointly develop or reduce to practice during (a) the time I am employed, whether or not during normal working hours, . . . which (i) relate to, result from or are suggested by any current or reasonably anticipated business activity of Yahoo!, (ii) are aided by the use of time, material, Proprietary Information or facilities of Yahoo!, whether or not during working hours or (iii) relate to any work I performed for Yahoo!, whether or not during normal working hours, at any time. I understand and agree that any inventions I create at any time which incorporate the Proprietary Information or other property of Yahoo! are the property of Yahoo! and I hereby assign all such Inventions." The employment agreement also assigned to Yahoo "all rights to obtain, register, perfect, renew, extend, continue, divide and enforce these proprietary interests."

The employment agreement further provided, if Yahoo were "unable for any reason to secure [Clarke-Martin's] signature to apply for or to pursue any application for any Inventions assigned to Yahoo!," he "irrevocably designate[d] and appoint[ed] Yahoo!" as his "agent and attorney in fact" with regard to patent prosecution "with the same legal force and effect as if executed by [him]." Clarke-Martin also "waive[d] and quitclaim[ed] to Yahoo! any and all claims . . . for infringement of any patents, mask works or copyrights resulting from any such application for letters patent or mask work or copyright registrations assigned hereunder to Yahoo!"

In August 2005, Clarke-Martin used Yahoo's "Idea Factory" tool[2] to suggest a project related to "Y! Music Contextual ads." The project proposed serving "Y! Search Marketing ads to Y! Music Listeners" by using "lyrics, Billboard magazine genre groupings, and other demographics to leverage assisted matching of Y!SM advertiser base," thereby providing "a new target for Y!SM ads."

---

[2] Idea Factory was a tool for employees to submit ideas that related to current or potential future Yahoo projects, which sometimes led to patent applications.

In October 2006, Chris Kalaboukis, project manager at Yahoo! Targeted IP/Idea Factor, contacted Clarke-Martin to tell him he had "written up your invention (Y! Music Contextual ads which you submitted into Idea Factory [last year]) for possible patent . . . ." Kalaboukis asked Clarke-Martin to review a draft of the disclosure he had prepared. Clarke-Martin replied, "Cool! . . . Looks really great." Clarke-Martin and Kalaboukis then submitted the invention disclosure to Yahoo's patent group, listing both of them as co-inventors and identifying the business area as "Yahoo! Media Group (YMG)." In response, Yahoo's Patent Asset Development Group notified Kalaboukis and Clarke–Martin that a patent attorney would be contacting them "in the near future" to discuss their "idea submission."

In April 2007, Yahoo filed United States Patent Application No. 11/697,615 ('615), bearing the title "Method and System for Displaying Contextual Advertisements with Media." The application identified both Kalaboukis and Clarke-Martin as inventors and listed Yahoo as assignee. Kalaboukis signed the application and his assignment to Yahoo was recorded on July 20, 2007. Clarke-Martin, however, refused to sign the supporting declaration confirming that he was one of the inventors. Yahoo submitted a petition to waive his signature as that of an uncooperative inventor. Attached to the petition was an e-mail message from Clarke-Martin to Kalaboukis stating that Clarke-Martin would not sign the application because Yahoo had "violated my equal employment rights, invalidating my employment agreements and claims to my intellectual property." Yahoo's petition was granted in May 2008, and patent No. 7739596 (the '596 patent) issued on June 15, 2010. Yahoo later filed applications for additional patents, which it has referred to in this litigation as "the '596 patent family."

In May 2008, Clarke-Martin and Yahoo entered into an agreement to settle Clarke-Martin's employment discrimination claims (settlement agreement). The settlement agreement included an "Intellectual Property Carve-Out," which provided "[n]othing in this Settlement Agreement shall impact, limit or impair [Clarke-Martin's]

3

alleged rights, interests, claims, or potential claims: (a) in and to that certain US Patent Application No. 11/697,615 on April 6, 2007 ('the Application'), (b) in and to any invention described in the Application for which [Clarke-Martin] alleges he is a sole or joint inventor, (c) in and to any US or foreign application claiming priority directly or indirectly from the Application, (d) in and to any invention described in any alleged submission by [Clarke-Martin] into [Yahoo!'s] Idea Factory system, (e) against [Yahoo!] for any wrongdoing and harms arising from or related to any of the foregoing (a)-(d). 'All of the aforementioned, and any and all of Yahoo!'s potential defenses to any or all of them, shall be treated as if this Settlement Agreement had not been made.' "

In October 2011, Clarke-Martin executed an assignment of patent rights, whereby he agreed to transfer the '596 patent from himself to "41 Ads, Inc.," a company he founded and which was a predecessor corporation to Media Relevance. The assignment was recorded with the United States Patent Office.

In January 2013, Clarke-Martin and 41 Ads, Inc., contacted Yahoo to discuss business opportunities concerning the "IP we co-share" and to see "if there is an opportunity to partner with Yahoo."

In February 2013, Yahoo recorded an assignment of Clarke-Martin's interests in the '596 patent to Yahoo. The effective date of the assignment was October 2003, based on Yahoo's submission of Clarke-Martin's employment agreement, which included the assignment of inventions agreement.

In May 2014, Yahoo filed a complaint against Clarke-Martin for quiet title, breach of contract, conversion, declaratory relief, breach of duty and loyalty, and violation of Penal Code section 502. As to the first four causes of actions involving the patent claims,[3] the complaint alleged that Yahoo was the "sole and only owner and title holder

---

[3] The other causes of action involved allegations that Clarke-Martin copied confidential information without authorization. The claims were not part of the subject summary adjudication motion and are thus not relevant to this appeal.

to the '596 Patent Family pursuant to the Assignment Agreement" and that Clarke-Martin and Media Relevance "falsely claimed title to the '596 patent." Among other remedies, Yahoo sought to quiet title its ownership of the '596 patent family, a declaration that Clarke-Martin and Media Relevance had no interest in the '596 patent family, and an expungement of any and all assignments with the United States Patent Office purporting to assign an interest in the '596 patent family to any entity other than Yahoo.

In July 2014, represented by counsel, Clarke-Martin and Media Relevance filed an answer and later an anti-SLAPP motion under Code of Civil Procedure section 425.16. The trial court denied the anti-SLAPP motion. Clarke-Martin and Media Relevance moved for reconsideration, which was denied. Clarke-Martin and Media Relevance appealed the order. This court affirmed. (*Yahoo! Inc. v. Media Relevance Inc.* (Feb. 23, 2016, H041872) [nonpub. opn.].)

Following the appeal, in September 2016, Clarke-Martin and Media Relevance moved for summary adjudication on its statute of limitations defense to Yahoo's patent-related causes of actions (quiet title, breach of contract, conversion, and declaratory relief). They argued that Clarke-Martin acquired public co-title to the patent application in April 2007, and that in July 2007 he " 'clearly' refused to assign his public co-title to Yahoo" by refusing to participate in the patent application process. They asserted that the 2008 settlement agreement, which included a carve-out of the intellectual property issue, put Yahoo on notice that "Clarke-Martin continued to controvert and repudiate the very contractual rights that Yahoo now seeks to enforce." They also asserted that Yahoo made no public title claim until February 2013, when it recorded Clarke-Martin's 2003 employment agreement against the patent, and did not file the instant complaint until May 2014. Clarke-Martin and Media Relevance argued that the four-year statute of limitations period began to run in June 2008. Thus, they alleged that the complaint filed in May 2014 was barred by the applicable limitations period.

5

The trial court denied the motion for summary adjudication based on the statute of limitations defense. In relevant part, the court concluded that while a four-year limitations period was applicable, Clarke-Martin and Media Relevance had failed to demonstrate that the claim accrued prior to October 2011, when Clarke-Martin purported to assign his interest in the patent. Finding that the October 2011 assignment constituted the assertion of an adverse claim against Yahoo's intellectual property rights, the court concluded that the May 2014 complaint was filed well-within the applicable limitations period and thus was not time-barred.

In February 2017, Yahoo moved for summary adjudication of its first four causes of action regarding the patent claim. Yahoo asserted that it had sole ownership of the '596 patent family based on Clarke-Martin's employment agreement, which included an assignment of inventions provision that unambiguously covered the subject patent. Yahoo asserted that after it learned about Clarke-Martin's purported October 2011 assignment in January 2013, it quickly moved to clarify the record with the United States Patent Office in February 2013, and thereafter filed suit in 2014 to protect its rights.

Following additional briefing and argument, the trial court granted in part Yahoo's motion for summary adjudication. The court concluded that Yahoo failed to meet its burden as to the second and third causes of action for breach of contract and conversion, but succeeded in meeting its burden as to the first and fourth causes of action for quiet title and declaratory judgment. Having met its burden on the first and fourth causes of action, the court then found that Clarke-Martin and Media Relevance failed to demonstrate a triable issue of fact as to those causes of action. Judgment was entered in Yahoo's favor as to its first and fourth causes of action on September 27, 2018. The remaining causes of action were voluntarily dismissed without prejudice. Clarke-Martin and Media Relevance timely appealed.

## II. Discussion

### A. *Statute of Limitations*

On appeal, and now proceeding in propria persona, Clarke-Martin contends that Yahoo's complaint was filed outside the applicable limitations period. He argues that the "prima facie establishment of actual controversy" occurred in 2008,[4] when the settlement agreement was made. He asserts that "[p]rior to the 2011 Patent Reform Act, the presumptive owner of a patent [was] the inventor," and because the 2008 settlement agreement did not resolve matters involving the '596 patent, it was Yahoo's "burden . . . to seek resolution of a contract matter before the statute of limitations expired." Thus, he contends that the trial court erred by not granting summary adjudication on his statute of limitations defense.

### 1. *Standard of Review*

"The standard of review on a motion for summary judgment or summary adjudication is familiar. A defendant meets his or her burden in a summary adjudication motion 'by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case.' [Citations.] 'We review questions of law as well as orders granting summary adjudication under the de novo standard of review.' " (*Angelica Textile Services*, *Inc. v. Park* (2013) 220 Cal.App.4th 495, 504.)

"It is elementary that a statute of limitations does not begin to run until the cause of action accrues. [Citations.] Equally basic is that a cause of action does not accrue 'until the party owning it is entitled to begin and prosecute an action thereon' [citations], that is, not until 'the last element essential to the cause of action' occurs." (*Spear v.*

---

[4] Clarke-Martin repeatedly refers to the "2007 Settlement Agreement" in his briefs. However, the record reflects that the settlement agreement between him and Yahoo was signed in 2008. We thus understand his argument to be referring to the 2008 settlement agreement.

7

*California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1040.) "Traditionally, a claim accrues ' " 'when [it] is complete with all of its elements'—those elements being wrongdoing [or breach], harm, and causation." ' " (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341.) "A wrongful act . . . 'causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action . . . .' [Citation.] Instead, the cause of action does not accrue, and the statutory period does not commence to run, until the plaintiff sustains actual and appreciable harm." (*Garver v. Brace* (1996) 47 Cal.App.4th 995, 999-1000.)

"[Q]uiet title actions have special rules for when the limitations period begins to run." (*Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477 (*Salazar*).) As a general matter, " ' "the statute of limitations [for a quiet title action] does not run against one in possession of [property]." ' " (*Ibid.*) This rule, however, is not absolute. (*Ibid.*) " '[W]hether a statute of limitations bars an action to quiet title may turn on whether the plaintiff is in *undisturbed* possession of the [property],' " meaning that the possession is " 'exclusive and undisputed.' " (*Ibid.*) "[M]ere notice of an adverse claim" or " 'cloud on [plaintiff's] title' " is insufficient to "commence the owner's statute of limitations." (*Id.* at p. 478; *id.* at p. 481.) Rather, the defendant's "hostile claim [must be] 'asserted in some manner to jeopardize the superior title' held by [the] plaintiffs [citation]." (*Id.* at p. 478.)

### 2. *The Complaint Was Filed Within the Applicable Limitations Period*

In the trial court, Clarke-Martin and Media Relevance contended that a three-year limitations period was applicable to the conversion cause of action, and a four-year limitations period was applicable to the claims for quiet title, breach of contract, and declaratory relief. Yahoo agreed with these contentions.

On appeal, Clarke-Martin generally maintains that the four-year limitations period applies. Yahoo states only that it brought its claims "well within any relevant statutes of limitations period." We conclude, consistent with the contentions made in the trial court,

8

that a three-year and four-year limitations period was applicable to Yahoo's claims. (Code Civ. Proc., §§ 337, subd. (a) [breach of contract, four years], 338, subd. (c) [conversion, three years]; *Salazar*, *supra*, 236 Cal.App.4th at pp. 476-477 [quiet title based on an instrument, four years]; *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 883 [declaratory relief based on an instrument, four years].)

Considering these legal principles, Clarke-Martin's claim—that the statute of limitations began to run when the 2008 settlement agreement was signed—is unavailing. Prior to 2008, Yahoo was the sole owner of the '596 patent family pursuant to Clarke-Martin's employment agreement. As part of that employment agreement, Clarke-Martin agreed to "assign to Yahoo! or its designee, my entire right, title, and interest in and to . . . all Inventions which I may solely or jointly develop or reduce to practice" during his time at Yahoo. Consistent with this, in 2007 when Yahoo submitted its patent application, it listed Clarke-Martin as one of the inventors and Yahoo as the assignee. In 2008, Clarke-Martin and Yahoo settled employment discrimination claims. The 2008 settlement agreement contained an "Intellectual Property Carve-Out," which specified that the agreement would in no way alter, modify, or disturb Yahoo's or Clarke-Martin's rights or responsibilities with respect to the '596 patent family.

Clarke-Martin argues that this "un-resolved issue" in 2008 put the burden on Yahoo to "seek resolution of a contract matter before the statute of limitations expired." Not so. In order to challenge Yahoo's title or ownership of the '596 patent family, Clarke-Martin was required to assert, in some manner, an adverse claim that would jeopardize Yahoo's claim. Clarke-Martin's belief that the matter was unresolved in 2008 was insufficient to do so. At the earliest, Yahoo was put on notice that Clarke-Martin had asserted an adverse claim in October 2011, when he purported to execute an assignment of his rights to the '596 patent family. Using that date as when Yahoo's claim for quiet title accrued, Yahoo's complaint filed in May 2014 was well-within the three- and

9

four-year statute of limitations period.[5]  Accordingly, the trial court did not err in denying Clarke-Martin's and Media Relevance's motion for summary adjudication on the statute of limitations defense.

### B. Waived Claims

In his "Statement of the Case" section, Clarke-Martin states:  (1) "Media Relevance is asking the Court of Appeal to review judgment of the First and Fourth Causes of Actions" and (2) "Media Relevance is asking the Court of Appeal to review the order to modify Steven Clarke-Martin['s] (sole inventor) assignment of patent rights."

The party appealing a judgment must "affirmatively demonstrate error" by "provid[ing] citations to the appellate record directing the court to the evidence supporting each factual assertion." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian*).)  "The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived. [Citation.] ' " ' "In other words, review is limited to issues which have been adequately raised and briefed." ' " ' " (*Ibid.*)

To the extent Clarke-Martin challenges the order and judgment granting summary adjudication in favor of Yahoo on any grounds not addressed above, he does so without argument, reference to the record, or citation to supporting case law.  Because the issue is inadequately raised and briefed, we consider it waived and do not address it.[6] (*Meridian, supra*, 67 Cal.App.5th at p. 684.)

---

[5] Yahoo maintains on appeal that its causes of action accrued "no earlier than 2013," when it learned of Clarke-Martin's purported assignment.  In the trial court, it argued its causes of action accrued in October 2011, when the assignment was executed. We need not definitively resolve this issue.  Under the earliest possible date, Yahoo's complaint was timely filed.

[6] We are mindful of the fact that appellant is self-represented.  However, he is not exempt from compliance with the general rules set forth above.  "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated

### III. Disposition

The judgment is affirmed.

---

like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; see also *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 952.)

_____
                  Wilson, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.


_____
               Danner, J.

Yahoo!, Inc. v. Media Relevance, Inc. et al.
H046485